UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLE RENEE LITTLE,

           Plaintiff,

      v.                                         **DECISION AND ORDER**
                                                         19-CV-1704S
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

        1.        Plaintiff Nicole Renee Little brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II and Title XVI of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed her application with the Social Security Administration on October 18, 2012. (R.[1] at 133.) Plaintiff alleged disability beginning on May 19, 2011, due to anxiety, depression, difficulty concentrating, difficulty getting work done, inability to lift over 20 pounds, inability to sit or stand more than one hour, inability to twist or bend without pain, fibromyalgia, muscle spasms, blurry vision, migraines, peripheral neuropathy, and difficulty moving. (R. at 152.) Plaintiff's application was denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). On April 25, 2014, ALJ Timothy McGuan held a hearing at which Plaintiff, represented by her attorney, appeared and testified. (R. at 34-67.) On October 6, 2014,

---

[1] Citations to the underlying administrative record are designated as "R."

ALJ McGuan issued a decision finding Plaintiff not disabled. (R. at 16-28.) On December 16, 2015, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff appealed, and the District Court ordered remand of Plaintiff's case. (R. at 547-551.) On remand, ALJ McGuan held a hearing on March 20, 2017, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 467-518.) Vocational Expert Dawn Blythe also appeared and testified by telephone. At the time of the hearing, Plaintiff was 38 years old, with a college education and prior work experience as a bartender, server, case manager, residential counselor, and social worker. (R. at 154.)

3.  The ALJ considered the case *de novo* and, on August 26, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 434-449.) Plaintiff then filed the current action on December 23, 2019, challenging the Commissioner's final decision.[2]

4.  Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 11.) Plaintiff filed a response on July 31, 2020 (Docket No. 12), at which time this Court took the motions under advisement without oral argument. For the reasons that follow Plaintiff's motion is granted and Defendant's motion is denied.

5.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

[2] The ALJ's August 26, 2019, decision is the Commissioner's final decision in this case because Plaintiff did not request review by the Appeals Council.

Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

3

whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

        8.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

        9.      Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 19, 2011. (R. at 437.)  At step two, the ALJ found that Plaintiff has the severe impairments of fibromyalgia, peripheral neuropathy, restless leg syndrome, lumbar disc bulge, thoracic spine disc herniation, chronic pain syndrome, and chronic adjustment disorder with mixed anxiety and depressed mood. (R. at 438.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 438-39.)

11.     Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light work, except that she can

> sit for up to 8 hours; stand and or walk for up to 6 hour(s), with a sit and stand option after 45-minutes; lift up to 20 pounds occasionally, 10 pounds frequently; can frequently stoop, kneel and reach overhead; can frequently finger and handle bilaterally. In addition [she] can do simple, unskilled work with occasional interaction with the public.

(R. at 440.)

12.     At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 447.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 448.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 449.)

13.     Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the ALJ relied on the stale opinions of Drs. Hongbiao Liu and Dr.

Gregory Fabiano. Plaintiff also argues that the specific sit-stand option the ALJ included in his RFC determination is not supported by substantial evidence.

14. Plaintiff first argues that the ALJ improperly relied on a stale opinion by consulting examiner Dr. Liu. Plaintiff argues that Dr. Liu's opinion is stale because it dates from 2013, and does not reflect the fact that Plaintiff's back and neck pain worsened over time. Defendant argues that the record does not demonstrate any deterioration making Dr. Liu's opinion stale.

15. A medical opinion is stale when it is "rendered before some significant development in the claimant's medical history." Clark v. Comm'r of Soc. Sec., No. 18-CV-0509-MJR, 2019 WL 3886723, at *3 (W.D.N.Y. Aug. 19, 2019). For a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes "indicat[ing] a claimant's condition has deteriorated" over that period. Vazquez v. Saul, No. 18-CV-242, 2019 WL 3859031, at *3 (W.D.N.Y. Aug. 16, 2019) (citing Whitehurst v. Berryhill, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018)). Medical opinions that are "stale and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), aff'd 652 F. App'x 25 (2d Cir. 2016).

16. Here, Plaintiff complained of back and neck pain from 2011 on. The record contains multiple complaints about back pain, and references to diagnoses of chronic pain. (See, e.g., R. at 1259, 1567, 1270, 1276, 1647, 1725.) An MRI of her cervical spine on June 6, 2012, showed straightening of the normal lordotic curvature, but no evidence of spondylolisthesis. (R. at 266.)

17. Plaintiff underwent an internal medical examination by Dr. Hongbiao Liu on January 3, 2013. (R. at 272-276.) On examination, Dr. Liu noted that Plaintiff was in no acute distress and walked with a normal gait, but had some difficulty walking on her heels and toes due to back pain. (R. at 273.) Her cervical spine showed full flexion, extension, lateral flexion, and full rotary movement bilaterally. (Id.) He noted no scoliosis, kyphosis, or abnormality in her thoracic spine. Her lower lumbar spine showed flexion and extension of 80, lateral flexion of 20 degrees bilaterally and rotation of 20 degrees bilaterally. (R. at 274.) He opined that Plaintiff had a mild limitation for prolonged walking, bending, kneeling, or overhead reaching. (R. at 275.)

18. Plaintiff argues, and this Court agrees, that the record shows deterioration in Plaintiff's condition after Dr. Liu's 2013 exam. Physical therapy office notes from April 24, 2018, demonstrate a forward cervical range of motion of 30, back range of motion of 35; right rotation of 25, left rotation of 25, and right and left side bend of 20. (R. at 1609). On August 16, 2018, a physical therapist assessed her cervical range of motion at 30, with right rotation of 45, left rotation of 40, right side bend of 30, and left side bend of 25, and diagnosed her with cervical disc displacement (R. 1553.) On September 7, 2019, Plaintiff reported that her symptoms were improving, but her cervical range of motion was only 35, flexion 40, right rotation 50, left rotation 52, right side bend was 33, and left side bend was 34. (R. at 1559) Despite the claim of improvement, these are below-normal values,[3] and represent a deterioration from Dr. Liu's finding of full flexion, extension, lateral flexion, and rotary movement of her cervical spine.

---

[3] "The cervical spine's range of motion is approximately 80° to 90° of flexion, 70° of extension, 20° to 45 of lateral flexion, and up to 90° of rotation to both sides."  Erik E. Swartz, R.T. Floyd and Mike Cendoma, *Cervical Spine Functional Anatomy and the Biomechanics of Injury Due to Compressive Loading*, 40 J. Athl. Train., Jul-Sept. 2005, at 155–161 (2005).

7

19. Plaintiff argues that MRI evidence also shows significant deterioration. An MRI of the cervical spine on September 3, 2014, showed "minimal central disc bulge" at the level C4-5. (R. at 1286.) No central canal stenosis, foraminal narrowing, or significant degenerative changes were seen. (Id.) An MRI of the thoracic spine on the same day revealed disc pathology at the T7-T8 level where there was a "right paracentral disc protrusion/herniation with a tear of the annulus fibrosus with deformity to the spinal cord." (R. at 1253.) A lumbar spine MRI on September 7, 2014, showed L4-L5 minimal diffuse disc bulge with annulus fibrosis, and slight straightening of the normal lordosis. (R. at 1283.) A faint annular tear was suspected. (Id.)

20. An MRI of Plaintiff's cervical spine from July 25, 2018, after Plaintiff was involved in a car accident, reveals no fracture, subluxation, or acute thoracic vertebral compression deformity. (R. at 1540.) It does show subtle levoconvex scoliosis and early degenerative endplate spurs. (Id.) A cervical MRI on January 17, 2019, was normal. (R. at 1807.) An MRI of Plaintiff's thoracic spine on January 17, 2019, showed "multiple focal disc herniations" with evidence of annular tears at T7-T8 and T8-9. (R. at 1805.)

21. The record thus indicates that Plaintiff had observable spinal deficits occurring after Dr. Liu's 2013 opinion. Yet the record contains no medical opinion assessing this later evidence, particularly the MRI evidence, in terms of Plaintiff's functional capacities. See Dale v. Colvin, No. 15-CV-496-FPG, 2016 WL 4098431, at *4 (W.D.N.Y. Aug. 2, 2016) ("[T]his evidence, which contains complex medical findings like MRI results, does not permit the ALJ to render a common-sense judgment about functional capacity. Without a function-by-function assessment relating this evidence to the physical demands of sedentary work or reliance on a medical source's opinion as to

8

Dale's functional capacity, the ALJ's decision leaves this Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review."). A medical opinion is needed here to assess the MRI findings and assess their implications for Plaintiff's functional capacity.

22. The medical evidence—both office findings and MRI data—suggests that Plaintiff experienced increased spinal limitations after Dr. Liu's examination. This, along with the six-year gap between Dr. Liu's opinion and the ALJ's decision, makes Dr. Liu's opinion stale. A stale opinion such as this does "not constitute substantial evidence to support an ALJ's findings," and remand is required for an updated assessment. Nau v. Berryhill, No. 1:17-CV-00703(JJM), 2018 WL 5993367, at *3 (W.D.N.Y. Nov. 15, 2018) (citing Majdandzic v. Commissioner of Social Security, 17-CV-1172-FPG, 2018 WL 5112273, at *3 (W.D.N.Y. 2018)).

23. Plaintiff also argues that the opinion of Dr. Fabiano was stale regarding her mental health impairments, and that the ALJ erred in including a highly specific sit-stand option in her RFC. Because remand is warranted on other grounds, this Court will not consider these arguments here.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings, consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:   November 3, 2020
         Buffalo, New York


                                          s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                       United States District Judge